UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Marwan Zayed,  *Plaintiff*,  v.  Village of Lisle,  *Defendant* | No. 25 CV 9386  Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Marwan Zayed owns the Galewood Pub in Lisle, Illinois. He identifies as a brown Arab American of Middle Eastern descent. Zayed alleges the Village of Lisle discriminated against him based on race and national origin in denying his application for a business development grant. The Village moves to dismiss under Rule 12(b)(6), arguing that Zayed's claims are either time-barred or otherwise not cognizable. [Dkt. 7.][1] The court grants the motion in part as to Counts I, III, IV, and V and declines to exercise supplemental jurisdiction over Count II, so the case is remanded to state court.

**I.     Background[2]**

In February 2021, Zayed executed a lease for commercial space on College Road in Lisle to open the Galewood Pub. [Dkt. 1 at 7, ¶ 8–10.] When Zayed began discussing renovation plans and permitting requirements with the Village, no one informed him of his eligibility for the Village's Business Development Grant Program, a program through which the Village offered financial grants to new businesses in the Village. [*Id.* at 8, ¶ 12.] Nor, Zayed alleges, did the Village provide him with guidelines for the process once he became aware of the program and sought an application. [*Id.* at 8, ¶ 11–15.] By contrast, he says, the Village proactively offered this guidance to other business owners. [*Id.*]

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.
[2] The following factual allegations are taken from Zayed's complaint [Dkt. 1 at 6–26] and accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

1

On July 11, 2021, Zayed applied to the grant program. [*Id.* at 8, ¶ 14.] Nearly 18 months passed with no word on the application's status, including any deficiency in the application, or whether it had been approved or denied. [*Id.* at 9, ¶ 17.]

At some unspecified point, Zayed submitted a Freedom of Information Act request to the Village about his application. [*Id.* at 9, ¶¶ 17–20.] Using the records produced in response to that, Zayed learned the name of the employee assigned to evaluate his application and called her. [*Id.* at 9, ¶ 18.] During their conversation, the employee told Zayed that she had recommended his application be approved, but she did not know why the Village had not approved it, though she "believe[d] the Village just does not like" Zayed. [*Id.* at 9, ¶ 19.]

Between June 2021 and May 2022, Zayed alleges that the Village's plumbing inspector and Building Official inconsistently applied stricter code requirements to him than to other restaurant owners in the area who were not a member of Zayed's protected class. [*Id.* at 9–10 ¶ 32.] For example, Zayed alleges that Village representatives informed him that he needed to install a "rigid pipe to act as a sleeve for the flex line for the soda dispenser," when this had not been required for other restaurants, and that he was only permitted to install his preferred style of garage door at the Galewood once he pointed out that another restaurant in Lisle owned by someone not within a protected class had been allowed to install a similar door. [*Id.*] The "tenor and tone" of these interactions put Zayed "on notice that he, and his restaurant business, were not welcome in Lisle." [Dkt. 1 at 6–7, ¶¶ 32–33.]

On December 8, 2022, Zayed received a letter from the Village Manager explaining that his application "was not eligible for further review." [*Id.* at 9, ¶ 20.]

In October 2023, Zayed filed a charge of discrimination with the Illinois Department of Human Rights, alleging that the Village's denying his application denied him the full and equal enjoyment of its services on account of his race, ancestry, and color. [Dkt. 1 at 12, ¶ 34; *see* Dkt. 10-1 at 9, ¶ 17.][3] In the charge, Zayed included evidence of comparable and similarly situated business owners to whom the Village had awarded grant money, but who were not Arab American, of Middle Eastern descent, or brown skinned. [Dkt. 1 at 12, ¶ 25, 29, 35; *see* Dkt. 10-1 at 9, ¶ 17.] This included NextStep Property Group, LLC, who applied to the Business Development Grant Program about five months before Zayed and received approval

---

[3] Zayed attaches to his response brief the dismissal notice on his charge of discrimination. [Dkt. 10-1.] Generally, a court "may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion." *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 505 (7th Cir. 2013). But Federal Rule of Civil Procedure 10(c) permits a court to consider certain documents attached to briefs on a motion to dismiss. *Id.* Such documents "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.,* 453 F.3d 882, 891 (7th Cir. 2006) (cleaned up). Because Zayed refers to this administrative charge in his complaint, [Dkt. 1 at 12–14, ¶¶ 34–43], and because it is central to his tolling and accrual arguments, the court considers it.

2

within two months for a $85,000 grant. [Dkt. 1 at 9, ¶ 24–27.] Similarly, Little Pops Pizzeria applied to the program seven months after Zayed and received approval within one month for a $50,000 grant. [*Id.* at 9, ¶ 28–31.] Eventually, the Illinois Human Rights Commission issued its notice of dismissal. [Dkt. 10-1.]

Zayed initiated his lawsuit on June 13, 2025 in the Circuit Court of DuPage County. [Dkt. 1 at 6.] His complaint alleges violations of the Illinois Civil Rights Act, 740 Ill. Comp. Stat. § 23/5 (Count I); the due process and equal protection clauses of Article I, Section 2 of the Illinois Constitution (Count II); violations of 42 U.S.C. § 1981 and § 1983 (Counts III and IV); and finally, a claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count V). [Dkt. 1 at ¶¶ 45–104.]

The Village timely removed the case based on federal question jurisdiction under 28 U.S.C. § 1331. It now moves to dismiss all five counts under Rule 12(b)(6). [Dkt. 7.]

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. To survive a motion to dismiss under Rule 12(b)(6), "a complaint's factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018)). The court accepts as true all well-pleaded allegations set forth in Flores's complaint and draws all reasonable inferences in his favor. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023). However, conclusory allegations are insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Limitations defenses are not often resolved at the motion to dismiss stage because "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Dismissal under such circumstances is appropriate only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see also Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) ("dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely.")

**III. Analysis**

### A. Count III: Section 1981

State actors may not be sued directly under § 1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). Section 1983 provides the exclusive remedy for violations of section 1981 committed by state actors. *Id.*; *Campbell v. Forest Preserve Dist. of Cook County*, 752 F.3d 665 (7th Cir. 2014). The Village argues that this requires dismissal of Count III with prejudice, *see* dkt. 7 at 6, and Zayed, for his part, concedes that § 1983 is the proper vehicle for the violations he alleges. [Dkt. 10 at 13.] Amendment would be futile because Zayed already pled a § 1983 claim.[4] So, the court dismisses Count III with prejudice. *See Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 2013 WL 4560231, at *3 (N.D. Ill. Aug. 28, 2013), *aff'd*, 752 F.3d 665 (dismissing § 1981 claim without permission "to replead under § 1983 because [the plaintiff had] already done that once in his original complaint and such a claim would be barred by the statute of limitations").

### B. Counts I, IV, and V: Statute of Limitations

An Illinois Civil Rights Act claim as asserted in Count I "must be brought not later than 2 years after the violation." 749 Ill. Comp. Stat. 23/5(b). Neither Title VI nor § 1983 contain an express statute of limitations, so federal courts have adopted the forum state's statute of limitations for personal injury claims. *Fillmore v. Page*, 358 F.3d 496, 508 (7th Cir. 2004) (as to § 1983); *Monroe v. Columbia College Chi.*, 990 F.3d 1098, 1099 (7th Cir. 2021) (Title VI). In Illinois, the statute of limitations is two years "after the cause of action accrued." 735 Ill. Comp. Stat. 5/13–202 (2005); *Flynn v. Donnelly*, 793 Fed. Appx. 431, 434 (7th Cir. 2019); *Lewis v. City of Chi.*, 914 F.3d 472, 478 (7th Cir. 2019). A claim accrues "when a plaintiff knows the fact and the cause of an injury." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

The Village argues that Zayed's Illinois Civil Rights Act claim, § 1983 claim and Title VI claim are all time-barred because they began accruing on December 8, 2022, when Zayed received the letter denying his grant application. That denial came roughly two and a half years before he filed his complaint. Zayed does not seriously dispute that the two-year limitations period has lapsed for these claims. Instead, he argues that his claims are subject to various tolling, accrual, and estoppel doctrines. They are not.

---

[4] "Courts have the authority to dismiss duplicative claims if they allege the same facts and the same injury." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014); *see Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004).

### 1. Tolling

Zayed first argues that statutory tolling should apply because he needed to exhaust his administrative remedies—that is, wait for a resolution in his charge of discrimination before the Illinois Department of Human Rights.[5] A statute of limitations can be tolled when a plaintiff is required to exhaust administrative remedies prior to filing a claim in federal court. *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 465–66 (1975). But when a plaintiff elects to exhaust administrative remedies but is not required to do so, the statute of limitations does not toll. *Id.* at 461; *see also Pramuk v. Purdue Calumet Univ.*, 2012 WL 6552920, at *4 (N.D. Ind. Dec. 14, 2012). That is the case here.

The § 1983 claim does not require administrative exhaustion. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982); *see also Smith v. Bray*, 681 F.3d 888, 896 n.2 (7th Cir. 2012) (as to § 1981). The same is true of his Illinois Civil Rights Act claim. *See* 740 Ill. Comp. Stat. 23/5(b) ("Any party aggrieved by [conduct the statute prohibits] may bring a civil lawsuit, in a federal district court or State circuit court, against the offending unit of government"); *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 890 (N.D. Ill. 2015). And it is true of the Title VI claim. *Hewitt v. U.S. Off. of Pers. Mgmt.*, 390 F. Supp. 2d 685, 690 (N.D. Ill. 2005) ("[N]othing in the language of Title VI [] requires exhaustion."); *Dertz v. City of Chi.*, 1997 WL 85169, at *10 (N.D. Ill. Feb. 24, 1997) ("In contrast to Title VII and the ADEA, Title VI of the Civil Rights Act does not require the exhaustion of administrative remedies."); *see also Pramuk*, 2012 WL 6552920, at *4.

Next, Zayed argues that equitable tolling should apply because he "diligently pursued his rights in good faith before the appropriate agencies," but this misstates the relevant standard. [Dkt. 7 at 10.] When a statute of limitations is borrowed from state law, that state's doctrine of equitable tolling governs. *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001) (applying Illinois equitable tolling to a § 1983 claim which "borrowed" the state statute of limitations). Equitable tolling in this case, then, requires more than diligence and good faith. Rather, (1) the defendant must have actively misled the plaintiff; (2) the plaintiff to have been prevented from asserting his rights in some extraordinary way; or (3) the plaintiff to have timely but mistakenly asserted his rights in the wrong forum. *Clay v. Kuhl*, 727 N.E.2d 217, 224 (Ill. 2000). Because Zayed addresses none of these considerations, equitable tolling does not apply.

---

[5] Zayed's complaint and response brief reference cross-filing the charge with the Equal Employment Opportunity Commission and a work-sharing agreement between that agency and the Illinois Department of Human Rights. [*See* Dkt. 1 at 13–14, ¶¶ 43–44.] But Zayed does not allege employment discrimination, so it is difficult to see the relevance of this argument. In any event, "there is no requirement that plaintiffs submit Title VI claims to the EEOC before filing a private suit." *Sawyer v. Columbia Coll.*, 2010 WL 3081260, at *6 (N.D. Ill. Aug. 5, 2010).

Nor does Federal Rule of Civil Procedure 15(c) allow Zayed's complaint to relate back to the charge of discrimination filed on October 3, 2023, as he argues. [Dkt. 10 at 10.] "Rule 15(c), by its terms, only applies to amended pleadings in the same action as the original, timely pleading." *Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990); *see also Grove v. United States*, 2022 WL 2457674, at *4 (S.D. Ill. July 6, 2022) ("[T]he fact that a similar lawsuit was filed in another case or another jurisdiction—even if it were about the same conduct, transaction, or occurrence—simply does not provide an anchor to which another federal pleading can relate back."); *Lucchesi v. Experian Info. Solutions, Inc.*, 226 F.R.D. 172, 174–75 (S.D.N.Y. 2005) ("The Federal Rules of Civil Procedure contemplates the relation back of pleadings only in the context of a single proceeding.") Here, "original pleading" refers to the complaint in this case filed in state court on June 13, 2025 before it was removed to federal court. *See* Fed. R. Civ. P. 15(c); *see also* Fed. R. Civ. P. 3 (defining when a civil action commences); Fed. R. Civ. P. 5(e) (defining how pleadings must be filed and served). Filing a charge with the Illinois Department of Human Rights therefore did not stop the statute of limitations from running on Zayed's claims.

### 2. Accrual

Under the discovery rule, a statute of limitations commences only when a plaintiff learns that he has been injured and by whom. *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010); *United States v. Kubrick*, 444 U.S. 111 (1979). Here, that is the date the application was denied in December 2022. *Kelly v. City of Chi.*, 4 F.3d 509, 511–12 (7th Cir. 1993) ("[T]he date of the alleged constitutional violation—the revocation of the license—was the date of accrual. The date the consequences of that violation became painful … was not the date of accrual."); *Amin Ijbara Equity Corp v. Vill. of Oak Lawn*, 2015 WL 13547527, at *4 (N.D. Ill. July 27, 2015), *aff'd sub nom*, 860 F.3d 489 (7th Cir. 2017) (noting that plaintiff's allegations—of discriminatory actions that took place before foreclosure proceedings were *initiated*—contradicted his arguments that accrual only occurred when a judgment of foreclosure was *entered*).

Zayed contends that he could not reasonably have known that the denial was discriminatory when his application was denied in 2022 "because the Village concealed comparative data." [Dkt. 10 at 10.] On his account, accrual could only occur after he received responses to FOIA requests and after the Illinois Human Rights Commission denied his charge on March 13, 2025. [*Id.* at 10–11.] He argues that these processes are what "revealed that similarly situated non-Arab applicants were treated more favorably." [*Id.*] The court cannot agree.

Begin with the latest accrual date Zayed proposes—March 13, 2025. The adjudication of his charge of discrimination cannot be the event that revealed to Zayed that he had been discriminated against by the Village. That argument is circular: how else could he have filed the charge in the first place?

6

As to the next accrual date he suggests—when he initiated proceedings before the IHRC on October 3, 2023—by then, he already alleged "that *on December 8, 2022*, [the Village] denied him the full and equal enjoyment of its services due to his race, Arab (Count A); due to his ancestry, Middle Eastern (Count B); and due to his color, brown (Count C)." [Dkt. 1 at 12 ¶ 34 (emphasis added); *see* Dkt. 10-1 at 6–7.] Regardless of when he received the Village's FOIA responses, Zayed's charge included allegations of "substantial undisputed evidence that [the Village] awarded grant money to various other entities, none of whom have principals who are in a protected class but are otherwise similarly situated" to Zayed. [Dkt. 1 at 12 ¶ 34 (cleaned up).] Indeed, his complaint alleges that conduct by Village representatives between May and July 2021 "put [him] on notice that he, and his restaurant business, were not welcome in Lisle." [Dkt. 1 at 12, ¶ 32.]

As Zayed describes, the "complete and utter lack of communication, concern, and assistance" for him during that early stage of preparing to open his restaurant was "indicative of a municipality with a culture that promotes and supports Caucasian-owned businesses while strongly discouraging and hindering those owned by people of color." [Dkt. 1 at 6–7, ¶¶ 32–33.] Perhaps this is true. But because Zayed alleges that he had reason to suspect the Village was discriminating against him even before it formally denied his application, the discovery rule cannot save his claims.

Lastly, Zayed argues that because the Village has continued to discriminate against him—by not reconsidering his application and by applying discriminatory and more favorable standards to later applicants—the continuing violation doctrine prevents his claims from accruing. [Dkt. 10 at 11.] This argument falls flat. The continuing violation doctrine may provide an exception to the statute of limitations when it "would be unreasonable to expect the plaintiff to perceive offensive conduct or when the earlier violation may be recognizable as actionable only in light of later events." *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001). But it "applies to injuries that are, by their nature, difficult to separate into discrete violations." *O'Malley v. Kass Mgmt. Servs., Inc.*, 539 F. Supp. 3d 935, 939 (N.D. Ill. 2021). That is not the case here, where the Village issued a denial letter on a date certain.[6] "The mere fact" that a defendant "allegedly made a regular habit of [a violation] is 'not enough to convert multiple individual violations into one long continuing wrong.'" *Id.* (quoting *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002)). Accrual is not delayed simply because the full extent of the injury is not yet known or predictable. *Amin Ijbara*, 860 F.3d at 493. So, the continuing violation doctrine does not apply.

---

[6] While Zayed's brief suggests that the Village's discriminatory conduct remains ongoing because technically, he has never received "confirmation that his Grant Application was rejected or granted, just that it was not even considered," [*see* Dkt. 10 at 11], his complaint belies this argument. The complaint consistently characterizes the December 2022 letter as a denial of his application. [*E.g.*, Dkt. 1, ¶¶ 78, 89, 98.]

7

### 3. Estoppel

Finally, equitable estoppel is inapplicable. "In contrast to equitable tolling, federal courts do not borrow [the] state equitable estoppel doctrine when they borrow a state statute of limitations; federal courts apply the federal doctrine of equitable estoppel." *Smith v. City of Chi. Heights*, 951 F.2d 834, 841 (7th Cir. 1992). Under federal equitable estoppel principles, the traditional elements are: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Garlovsky v. United States*, 211 F. Supp. 3d 1084, 1090 (N.D. Ill. 2016) (quoting *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)).

In a single undeveloped paragraph, Zayed represents that the Village "misled" him about "deadlines, concealed facts or acted in a way that delayed [his] discovery of discrimination," but he provides no details on how it did so. [Dkt. 10 at 11.] This argument is too bare to succeed—particularly given how, as discussed above, Zayed's allegations reveal that as early as May and July 2021, he believed the Village to be discriminating against him. In any event, undeveloped arguments are waived. *Kyles v. J.K. Guardian Sec. Servs.*, 236 F.R.D. 400, 402 (N.D. Ill. 2006).

Although dismissal at this early stage of litigation is typically inappropriate unless "the allegations in the complaint show that the statute of limitations is an impenetrable bar to recovery," that is the case here. *Fulcham v. Admire*, 2025 WL 1511099, at *2 (7th Cir. May 28, 2025) (citing *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 822 (7th Cir. 2022)). Counts I, IV and V and dismissed on timeliness grounds.

### C. Count II: Illinois Constitutional Claim

Because all of Zayed's federal claims are dismissed, only a state law claim remains under Article I, Section 2 of the Illinois Constitution. Lacking federal question jurisdiction, the court would need to exercise supplemental jurisdiction to keep the action in federal court. District courts "may decline to exercise supplemental jurisdiction over a claim … if [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). It declines to exercise supplemental jurisdiction here.

Generally, there is a presumption that jurisdiction is relinquished upon dismissal of all claims over which a court had federal subject-matter jurisdiction. *RWJ Mgmt. Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012); *Mogan v. City of Chi.*, 115 F.4th 841, 849 (7th Cir. 2024) ("The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state law claim, given its dismissal of the federal claims."). In limited circumstances, the presumption does not apply. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007). Those circumstances include "(1) the

8

state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided." *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008).

No such circumstances are present here. The statute of limitations to refile in state court is not implicated, and substantial judicial resources have not been expended on the remaining claim. This case is still in its early phases, and resolution of the state law claim, including whether he is entitled to declaratory or injunctive relief as he maintains, is a matter best resolved by the state court.[7]

## IV.  Conclusion

The motion to dismiss is granted in part. Counts I, III, IV, and V are dismissed with prejudice as untimely. The court relinquishes jurisdiction over Count II under § 1367(c), and remands the case to state court.

Enter: 25 CV 9386
Date:   December 3, 2025

_____
Lindsay C. Jenkins

---

[7]   In light of this disposition, the court also declines to resolve the Village's motion to strike Zayed's request for punitive damages.